The DORIC COMPANY, Appellant,

v.

LEO JAY ROSEN ASSOCIATES, INC.,
Appellee.

No. 19085.

United States Court of Appeals
Fifth Circuit.

June 14, 1962.

Richard S. Banick, Miami, Fla., Fowler, White, Gillen, Humkey & Trenam, Miami, Fla., of counsel, for appellant.

Abraham H. Shukat, Miami Beach, Fla., for appellee.

Before TUTTLE, Chief Judge, and BROWN and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

Leo Jay Rosen Associates, Inc., a Florida Corporation, brought suit against The Doric Company, a Washington Corporation, for advertising services rendered the Saxony Hotel, Miami Beach, Florida, recovering by jury verdict the stipulated amount of the account, and this appeal followed.

The Doric Company was engaged in managing real estate including hotel properties owned by it and others. Tom Muggleston purchased the Saxony Hotel with title being vested in Saxony Properties, Inc., a Delaware Corporation formed for the purpose of the ownership. That corporation at the same time entered into a management contract with The Doric Company to operate and manage the hotel, and whereunder the accounting was done in the Seattle central office of Doric, trade invoices were paid from there, various daily reports were made to the Seattle office by those in charge of the Saxony, and with Doric

having complete authority to hire all employees, and in general to supply management as experts. All funds were deposited in a Miami Beach bank with transfers being made to Doric in Seattle for use in meeting trade invoices and other obligations with the exception of the payroll which was paid locally.

Mr. Hilsenberg, then engaged in managing a Doric hotel in California, was engaged by Mr. Muggleston with the assistance of Mr. Clodfelter, president of Doric, as executive director of the Saxony at the time of the acquisition, and was paid by Saxony Properties, Inc.

At the time of the purchase Messrs. Clodfelter, Hilsenberg, Muggleston, the Doric auditor, and the real estate broker handling the matter were together at the Saxony. Mr. Clodfelter called a news conference and distributed a news release to the members of the press present and these included Mr. Paul M. Bruun, a writer for the Miami Beach Sun. The release announced the acquisition of the Saxony by Doric. Mr. Clodfelter stated to Mr. Bruun that Mr. Hilsenberg would be the manager. The news release and conference became the subject of a news story by Mr. Bruun, and also the basis for an article, hereinafter discussed, in the Sax Sunny News, a hotel house organ, repeating the news release, including the statement that the Saxony was being acquired by Doric.

At this point enters Mr. Rosen, president and owner of appellee. He was acquainted with Max Sax, brother of the former owner, who was retained by the new régime. The new management desired the services of an advertising agent, and Rosen wanted the business. Several agents were considered, numerous conferences were held between Mr. Rosen, Mr. Hilsenberg and members of his staff, and Rosen was finally selected.

Mr. Rosen testified that he had previously read the news article by Mr. Bruun, another to the same effect in the Miami Herald, and the article in the Sax Sunny News regarding the acquisition by Doric. He dealt with Hilsenberg as the managing director of the hotel, which title was on his office door.

One of the problems of an advertising agency is to be certain of reimbursement of sums advanced for accounts. Mr. Rosen testified that Mr. Hilsenberg assured him that his selection would be cleared with Doric, and that Doric would pay such sums as might be due. He was then advised by Hilsenberg that the president of Doric had awarded him the account. Statements were rendered to the Saxony Hotel, stipulated not to be a legal entity, and were paid by Doric from the Seattle office. Copies of materials prepared by Rosen were by direction of Hilsenberg forwarded to Doric in Seattle by the printer. Rosen knew nothing of the management contract.

At any rate the association lasted only a few months; the Saxony first being put into receivership, and later into bankruptcy. In the meantime Saxony Properties, Inc. sold the Saxony, the services of Mr. Hilsenberg were terminated and he was again employed by Doric.

The issue as submitted to the jury in charge was whether Rosen carried the burden of establishing that the Doric Company held itself out to Rosen to be the owner, lessee or operator, and therefore the principal in the operation and management of the hotel at the time the agreements for advertising were made, and that Rosen in the exercise of reasonable prudence and in reliance on such conduct performed the services in question at the instance and request of Doric.

Appellant contends that the evidence was insufficient to sustain this burden. The answer lies in a consideration of the doctrine of agency by estoppel whereunder Doric held itself out as the owner of the hotel, and Hilsenberg as possessing authority to bind it.

 Agency by estoppel in Florida embraces the primary elements of a representation by the principal, reliance on the representation by the claimant, and a change in position by the claimant in reliance on the representation. Bogue

Electric Manufacturing Company v. Coconut Grove Bank, 5 Cir., 1959, 269 F.2d 1; and Hartline v. Mutual Benefit & Accident Ass'n, 5 Cir., 1938, 96 F.2d 174.

In Bush Grocery Company v. Conely, 1911, 61 Fla. 131, 55 So. 867, the rule is stated thusly:

"Where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform a particular act, and therefore deals with the agent, the principal is estopped, as against such third person, from denying the agent's authority."

■ The evidence viewed, as it must be, most favorably to the jury verdict shows that the press release and statements made at the conference were representations by Doric through its president that it had acquired the hotel, and that Hilsenberg was to be the manager. The president of Rosen read three news articles based thereon to the effect that Doric had acquired the Saxony before entering into the arrangement to render the service here. Hilsenberg represented to Rosen that Doric had approved his selection, and was to pay for the services and Doric did pay for some of the services. Rosen relied on these representations to its detriment. This evidence covers the elements necessary to sustain an agency by estoppel, and constitutes an adequate basis for the verdict.

■ Nor were the proceedings infected with error because Rosen was permitted to testify as to the representations of agency by Hilsenberg. The representation of acquisition by Doric, and the holding out of Hilsenberg as manager was shown by other and independent evidence sufficient to establish the agency prima facie, and thereafter the statements of Hilsenberg were admissible to show reliance by Rosen on the prior representations by Doric, and to show that Rosen dealt with Hilsenberg as an agent of Doric and not in some other capacity. 2 Am.Jur., Agency, § 445; 4 Wigmore on Evidence (3rd Ed., 1940) § 1078.

■ The remaining assignments of error require little discussion. A substantial part of the trial was taken up in an attempt to keep the news release out of evidence. The rulings of the court at the instance of Doric compelled Rosen to seek out the news release itself rather than being able to prove it by secondary evidence. The testimony was that no copy of it could be located but after objection, Rosen was at the last minute able to get reporter Bruun who had retained the news release to bring it to court and testify regarding it. Doric then took the position that Bruun could not testify and that the release was inadmissible because neither was listed in the pretrial stipulation of witnesses and exhibits to be used. Rosen claimed that it did not know of the need for the witness or the release, or that the witness had a copy of the release when the stipulation was made. The copy of Sax Sunny News, also admitted in evidence, was not listed in the stipulation, and the same objection is now made to it. It was in the possession of Max Sax, a listed witness who responded to subpoena and Rosen claimed that it was not listed because it was not in its possession. These were matters for the discretion of the trial court and no abuse of discretion appears. Texas and Pacific Railway Company v. Buckles, 5 Cir., 1956, 232 F.2d 257, cert. denied 351 U.S. 984, 76 S.Ct. 1052, 100 L.Ed. 1498. This is particularly so where no prejudice to the objecting party was shown at the time. Cf. Globe Cereal Mills v. Scrivener, 10 Cir., 1956, 240 F.2d 330. Cherney v. Holmes, 7 Cir., 1950, 185 F.2d 718; and 3 Moore's Federal Practice (2nd ed., 1948) § 16.20.

■ And lastly, it was not error to admit in evidence as exhibits advertising brochures prepared by Rosen for the Saxony at the instance of Hilsenberg,

copies of which, after printing, were mailed by direction of Hilsenberg to the Seattle office of Doric. They at least served to advise Doric that the services of Rosen were continuing and, in turn, the direction that they be forwarded to Doric was some assurance to Rosen that Doric was the owner or lessee of the hotel. They were material to this extent and were admissible premised on the prior prima facie proof of the agency of Hilsenberg. 2 C.J.S. Agency § 29(2) (b) and see citations of authority, supra, on admissibility of representations of agency by Hilsenberg.

The motion of appellee for additional costs in the form of attorney's fees in connection with this appeal is denied.

The judgment appealed from is

Affirmed.