Stuart **ALLEN**, Plaintiff,

v.

Paul C. **CARLOTTI**, Defendant.

No. 75–367–Civ—JLK.

United States District Court,
S. D. Florida,
Miami Division.

Aug. 28, 1975.

Getz charges that he was imprisoned for one year as a result of Bruch's actions.

Goldstein, Goldman, Kessler, Underberg, Miami, Fla., for defendant.

Irving M. Wolff, Miami, Fla., for plaintiff.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JAMES LAWRENCE KING, District Judge.

At the time this Court entered its Order of Summary Judgment and Judgment, it reserved the right within thirty days from the entry thereof to file Findings of Fact and Conclusions of Law in this nonjury diversity and declaratory judgment action.

During the pendency of this litigation extensive discovery was had by the parties, and based upon the entire record, the Court concluded as a matter of law that it could enter a summary judgment.

## THE COURT CONCLUDED THAT THE MATTER WAS RIPE FOR SUMMARY JUDGMENT

While the Court recognized that even though both parties sought a summary judgment in their respective favor, it

---

* Consisting of all of the pleadings, the affidavits of the witness Stewart and the Plaintiff and Defendant, the depositions of the witnesses Stewart and Lowrie and of the Plaintiff Allen, the voluminous exhibits identified, the proceedings had before the Court at the time it entered its Preliminary Injunction, the several memoranda submitted by counsel, the Plaintiff's Motion for Summary Judgment, and the Defendant's cross-motion for summary judgment.

was required to examine the record in its entirety to reach a determination of the existence of any issue of fact, actual or by inference, which would be of a degree of importance to preclude the entry of summary judgment. From the record [see note, page 1038 *supra*] the Court did not find the existence of any such fact or inference.

■ A federal court under Rule 56 F.R.C.P., *28 U.S.C.A.*, in addition to the pleadings, will consider all papers of record, as well as any material prepared for the summary judgment motion. [*Northwestern National Insurance Company v. Corley*, 503 F.2d 224 (CA7 1974); *Wright & Miller, Federal Practice & Procedure*, § 2712, p. 476, Vol. 10 (1973).]

The United States Court of Appeals for the Fifth Circuit is in accord with this doctrine. [*Fontenot v. Texaco, Inc.*, 397 F.2d 275 (CA5 1968); *Pennington v. Pacific Coast Transport Co.*, 419 F.2d 122 (CA5 1969).]

■ An issue of fact is not "genuine" within the federal civil rules governing summary judgment unless it has probative force as to controlling issues. [See *Neff v. World Publishing Co.*, 349 F.2d 235, 239 (CA8 1965); *Pennington v. Pacific Coast Transport Co., supra*, at 124.]

■ Where the admitted or undisputed material facts present no conflicting inferences or conclusions, and only questions of law, there is no barrier to summary judgment. [*Spark v. Catholic University of America*, 510 F.2d 1277 (D.C. Cir. 1975); *Hodgson v. Union de Empleados de los Supermercados Pueblo*, 388 F.Supp. 1026 (D.C.P.R.1974); *Ammons v. Franklin Life Insurance Co.*, 348 F.2d 414, 417 (CA5 1965).]

■ The interpretations of writings and whether or not they constitute valid contracts and the effect thereof, are not factual issues but legal issues, and it is the duty of the Court to make such determinations in proper proceedings. [*Neff v. World Publishing Co., supra*, at

253; see also *Caplan v. Roberts*, 506 F. 2d 1039, 1042 (CA9 1974).]

It has further been held where the only conflict concerns legal consequences of undisputed facts, the Court can grant summary judgment. [*Fitzsimmons v. Greater St. Louis Sports Enterprise, Inc.*, 63 F.R.D. 620 (D.C.Ill.1974).]

■ Applying the foregoing principles to the present record, the Court finds that there is no conflict as to any of the material facts which give rise to this diversity action seeking declaratory relief. The Court finds that as a matter of law it was required to make a determination of the legal consequences of the undisputed facts in granting summary judgment.

There is no question that the Court has jurisdiction of the parties and the subject matter; the Plaintiff is a resident and citizen of the State of Florida, the Defendant is a resident and citizen of another state and/or foreign country, the amount in controversy exceeds $10,000, and the res which constitutes the amount in controversy, i. e., a Motor Sailer [hereinafter referred to as the ALBOMA] is located and situated physically within this Court's geographical jurisdiction [28 U.S.C.A. § 1332]. Hence the Court, having jurisdiction of the parties and the subject matter in these diversity proceedings, can render declaratory relief [28 U.S.C.A. §§ 2201, 2202].

In accordance with the exercise of its jurisdiction the Court entered a Preliminary Injunction, after notice and hearing, placing the ALBOMA in the possession of the Plaintiff Allen, and restraining the Defendant Carlotti and all other parties from interfering with said possession.

## UNDISPUTED FACTS

The status of this record indicates that there are no genuine issues as to material facts, but the Court is called upon as a matter to law to interpret the effect of certain written documents and the actions of the parties in connection

therewith. For the purpose of convenience the Court will enumerate the undisputed facts which give rise to the questions of law.

1. On October 25, 1974 the Defendant Carlotti entered into an agreement with Underwood Marine of Miami, Florida. This agreement is represented by three written instruments whereby:

(a) Carlotti appointed Underwood and its employee STEWART to act as broker-agent in connection with the purchase of a new Motor Sailer for the sum of $118,000.

(b) That Underwood would act as broker to sell the ALBOMA, the vessel in question. . In connection with this appointment Underwood was given an exclusive listing for a period of ninety days to sell the ALBOMA for a price of $75,000, or any price or terms that Carlotti the owner may accept. Underwood was to receive a brokerage fee of ten per cent (10%). All offers for the ALBOMA were to be transmitted to the owner Carlotti by Underwood.

In the event the ALBOMA could not be sold by the time the new vessel was to be delivered, UNDERWOOD would then guarantee to accept the ALBOMA and credit the purchase price of the new vessel in an amount of $60,000. CARLOTTI further agreed to pay $1,500 as delivery charges for the ALBOMA.

(c) The third portion of the agreement was an agreement executed November 8, 1974 between Carlotti and Underwood, whereby Underwood agreed to order for and/or sell to Carlotti the new Motor Sailer for $118,000 [Exhibits A, B and C, Plaintiff's Motion for Summary Judgment]. The genuineness and existence of the said documents were admitted by the Defendant [see Plaintiff's Request for Admissions and Defendant's admission].

Thus, by virtue of the execution of the foregoing documents, the Defendant Carlotti appointed Underwood Marine as his broker-agent to sell the ALBOMA within a limited period of time. If Underwood could not sell the ALBOMA within the allotted time, i. e., within the ninety-day period or prior to delivery of the new vessel, Carlotti was required to pay $1,500 to deliver the ALBOMA to Underwood, and Underwood was required to pay $58,500 for Carlotti's account in connection with the purchase of the new vessel. In addition thereto, Carlotti deposited with his broker-agent the sum of $12,800 as a deposit in connection with the purchase of the new vessel. [Exhibit K, Plaintiff's Motion for Summary Judgment; the authenticity of which was admitted by the Defendant, see Plaintiff's Request for Admissions and Exhibit L; see also Stewart Deposition, p. 62.]

2. In accordance with the exclusive brokerage agreement to sell the ALBOMA executed on October 25, 1974, Underwood advertised the sale of the vessel in The Wall Street Journal, Eastern Edition, on November 15, 1974, and in The New York Times from November 1ε to 19, 1974 [Exhibit D, Plaintiff's Motion for Summary Judgment; Plaintiff's Exhibit 29 for Id., Stewart Deposition, p. 24].

3. At all times material to these proceedings the new vessel ordered by Carlotti was not delivered, nor had the ninety-day exclusive listing expired.

4. From October 25, 1974 until the ALBOMA was delivered to Allen's agent, the ALBOMA remained in Carlotti's possession, moored in New Rochelle, New York at the Imperial Yacht Club. At no time did Underwood pay for her upkeep or dockage [Stewart Deposition, p. 103].

5. The registered owner of the ALBOMA at all times material to these proceedings was Paul C. Carlotti, and General Electric Credit Corporation [GECC] of South Miami, Florida held a first lien on said vessel.

6. At the time material to these proceedings the amount of said GECC lien was approximately $28,943.64 [LOWRIE Deposition, p. 12 and Plaintiff's Exhibit 4 annexed thereto; see also Plaintiff's Motion for Summary Judgment, Exhibit

F; Plaintiff's Exhibit 21 for Id., STEWART Deposition, p. 57].

7. In late November 1974, ALLEN sought to purchase the ALBOMA, and in accordance with the provisions of the said October 25, 1974 exclusive listing [¶1(b)], *supra*], Allen at his own expense, accompanied by Stewart, the employee of Carlotti's broker-agent Underwood, went to New York City to meet Carlotti and discuss the terms and conditions that Carlotti would accept in connection with the sale of the vessel, and to further determine what chattels would remain with the vessel subsequent to her sale. This trip occurred on November 26, 1974 [Allen's Deposition, pp. 80–89].

8. Allen and Stewart were met at LaGuardia Airport by Carlotti, who drove them to the Imperial Yacht Club, New Rochelle, New York, to enable Allen to inspect the vessel [Allen Deposition, pp. 80–89].

9. Subsequent to the inspection and discussions as to the chattels remaining on board subsequent to sale and other matters relating to the sale, Allen and Stewart were entertained by Carlotti at luncheon and the bargain was sealed with a handshake between Carlotti and Allen.

10. Allen and Stewart returned to Miami and an offer to purchase the ALBOMA by Allen for $60,000,** free and clear of all liens, was presented under the date of November 26, 1974, and accepted by Carlotti's broker-agent for and on behalf of Carlotti, to wit: Underwood Marine. Allen as purchaser accepted the vessel and agreed to abide by the offer to purchase on December 10, 1974 [Exhibit G, Plaintiff's Motion for Summary Judgment; Plaintiff's Exhibit 56 for Id., Stewart Deposition, pp. 60, 61].

11. Subsequent to December 10, 1974, but during the month of December, Allen at his own expense retained one Philip Holland to go to New York to transport the ALBOMA to Miami [Allen Deposition, pp. 93, 94]. Holland executed a delivery receipt for the vessel which was delivered to him by Carlotti [Exhibit H, Plaintiff's Motion for Summary Judgment; see also Stewart Deposition, Plaintiff's Exhibit 71 for Id., p. 62].

12. In accordance with Carlotti's instructions, and in furtherance of the broker-agent relationship between Carlotti and Underwood, Allen paid to Underwood the entire consideration of the purchase price of $58,500 [Exhibits J and K, Plaintiff's Motion for Summary Judgment; Plaintiff's Exhibit 57 for Id., Stewart Deposition, p. 61; also Exhibit L, Plaintiff's Request for Admissions, and admitted by Defendant].

13. Underwood as agent to Carlotti breached its fiduciary duty to its principal when it failed to apply the payments it received from Allen in the amount of $58,500, and the sum deposited by the principal Carlotti with his agent Underwood in the amount of $12,800, to satisfy the lien held by GECC, and to utilize the sums remaining after payment of said lien to purchase Carlotti's new vessel.

14. The principal Carlotti recognized the agent Underwood's breach of its fiduciary duty and made demand upon his agent to perform [Exhibit K, Plaintiff's Motion for Summary Judgment].

15. Carlotti recognized that he was contractually bound to Allen in accordance with the accepted offer to purchase [Exhibit G, Plaintiff's Motion for Summary Judgment] to pay and discharge the outstanding lien to GECC, and on February 25, 1975, subsequent to his demand upon his agent Underwood to make said payment, Carlotti issued his personal check to GECC in an amount to satisfy the unpaid portion of the said indebtedness owed to GECC [Exhibit N, Plaintiff's Motion for Summary Judgment; see also Exhibit O, Plaintiff's

** Less a credit of $1,500 to bring the ALBOMA to Miami, Florida from New Rochelle, New York.

Request for Admissions, admitted by Defendant].

Subsequently Carlotti stopped payment on this check and the sum due and owing to GECC to satisfy its lien is still outstanding.

16. At all times material to these proceedings the State of Florida and the State of New York were ˙ jurisdictions which had both enacted motorboat registration statutes [McKinney's Consolidated Laws of New York Anno., Vol. 62A, § 2251, ¶ 2; F.S.A. § 371.021 et seq.]. In accordance with these statutes the identification numbers of vessels are required to be displayed on the forward half of the boat in a conspicuous manner, with letters at least three inches high. The ALBOMA did not carry such identification numbers.

17. The responsibility to place the identification numbers on the ALBOMA, in accordance with the Florida and New York statutes, was Carlotti's. His failure to so display the registration numbers by affixing the same to the ALBOMA as required by both statutes, enabled his agent Underwood to mislead Allen into believing that the ALBOMA could be documented in accordance with the laws of the United States of America [*46 U.S.C.A. § 808*], and Allen in fact did so attempt to document the vessel, but was unable to do so [Exhibits O and P, Plaintiff's Motion for Summary Judgment; Third Party Defendant's Exhibits 1 and 2 for Id., Allen Deposition, p. 90].

18. Both the State of New York and the State of Florida have enacted the Uniform Commercial Code in relation to sales. Said statutes are exactly the same in both jurisdictions [McKinney's Uniform Commercial Code, §§ 2–308, 2–312, 2–403, 2–503, 2–507, 2–509(3), 2–606 and 2–716; F.S.A. §§ 672.2–308, 672.2–312, 672.2–403, 672.2–503, 672.2–507, 672.2–509(3), 672.2–606 and 672.2–716].

19. Inasmuch as the laws of the State of New York and Florida are identical, the legal issues presented can be resolved by the application of the laws of either state, without a determination as to whether or not the transaction between Allen and Carlotti was consummated in New York or in Florida.

## CONCLUSIONS OF LAW ARISING FROM UNDISPUTED FACTS

 ˙ 20. A principal is estopped from denying an agent's authority or renouncing the agency because of the agent's defalcation, especially where said principal reaffirms the agency by an independent writing. Such a principal, as is the Defendant in this cause, is bound to save an innocent purchaser harmless where his agent perpetrated a defalcation [see § *35, Restatement of Agency, 26 Fla.Jur. 632; Miller v. Chase & Co.,* 88 Fla. 500, 102 So. 553 (1924); *One Hour Valet of America, Inc. v. Keck,* 157 So.2d 83 (Fla.App.1963); *Doric Company v. Leo Jay Rosen Associates, Inc.,* 303 F.2d 817, 819, 820 (CA5 1965)].

 21. In accordance with the applicable law of sales prevailing both in New York and Florida, Carlotti warranted that he was the owner of the ALBOMA and that he was conveying said warranted title free and clear of all liens or any security interest, and Carlotti in fact attempted by issuance of his check to GECC to carry out his warranty in accordance with such prevailing law [see ¶18, *supra*].

22. As a matter of law the ALBOMA was subject to the motorboat registration laws of the State of New York and/or the State of Florida [see ¶16, *supra*]. It is of little consequence that Allen attempted to document the vessel in accordance with the laws of the United States of America.

23. Under the New York and Florida statutes Carlotti was the registered title owner of the ALBOMA at all times material to these proceedings [*McKinney's Consolidated Laws of New York Anno., Vol. 62A, § 2251, ¶2; F.S.A. § 371.021 et seq.*]., and thus as a matter of law Underwood Marine as an agent of Carlotti had no proprietary or other interest

in the ALBOMA. Underwood only acted as agent for the principal Carlotti.

24. The contents of the undisputed written documents and the implications arising therefrom require this Court as a matter of law to make the necessary determinations as to the impact thereof [*Neff v. World Publishing Co., supra, Caplan v. Roberts, supra*]. In accordance with the concept set forth in *Doric Company v. Leo Jay Rosen Associates, Inc., supra,* where an innocent party relied upon the representations of an agent who acts within the scope of his agency authority and the innocent party changes or alters his position, the principal [here Carlotti] is not only estopped to challenge the existence of the agency, but is liable for all of the damages which arise from the agent's malfeasance and misfeasance.

The foregoing shall constitute this Court's Findings of Fact and Conclusions of Law, and mixed Findings of Fact and Conclusions of Law, in support of its Order of Summary Judgment and Judgment entered July 30, 1975.