625 F.2d 44
 29 UCC Rep.Serv. 1053
 J. K. JONES and Lois R. Jones, Plaintiffs-Appellants,
v.
ONE FIFTY FOOT GULFSTAR MOTOR SAILING YACHT, HULL NO. 01,
her tackle, apparel and furniture, etc., in rem,
and General Electric Credit Corporation,
in personam, Defendants-Appellees.
 No. 78-2730.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 28, 1980.
 
 David F. Pope, Tampa, Fla., for plaintiffs-appellants.
 Reginald M. Hayden, Jr., Miami, Fla., for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Florida.
 Before COLEMAN, Chief Judge, and RONEY and GARZA, Circuit Judges.
 GARZA, Circuit Judge:
 
 
 1
 This is an appeal, in admiralty, on petitory, possessory and tortious claims from granting of summary judgment adverse to the purchasers of a sailing yacht, in favor of a secured party. They say that the two happiest days of a yacht owner's life are the day he buys it and the day he sells it.[1] Perhaps this case will carve an exception to that rule for we reverse the judgment of the District Court.
 
 FACTS
 
 2
 In October, 1974, J.K. and Lois R. Jones (appellants) attended the Annapolis, Maryland boat show and became interested in buying a fifty-foot Gulfstar Sailing Yacht from Underwood Marine, the exclusive retail dealer for such yachts. Later that month, the Joneses took a demonstration sail aboard a Gulfstar prototype, Hull No. 00. On November 22, 1974, the Joneses were informed that early production Gulfstar hulls would soon become available and at that time appellants agreed to purchase one at a base price of $59,000. They sent Underwood a check for $1,000 to confirm their agreement. As of November 22 no specific hull had been identified or associated with appellant's agreement to purchase.
 
 
 3
 In early December, 1974, appellants were informed by Underwood that Hull No. 01 had become available and soon thereafter appellants confirmed they would purchase it subject to satisfactory inspection and a trial sail. The inspection and trial sail were carried out on December 16 and appellants agreed to purchase Gulfstar Sailing Yacht, Hull No. 01, selected numerous options and gave a check to Underwood in the amount of $11,000. During January, 1975, although the yacht remained at Gulfstar's commissioning yard, the Joneses, through Underwood, made interior fabric and carpet selections and ordered and installed several thousand dollars worth of electronic gear through another company. Additionally, the Joneses initiated procedures for registration of Hull No. 01 wherein she was named "CAST OFF".
 
 
 4
 On February 5, 1975 Underwood sent the Joneses a revised sales agreement, showing Lois R. Jones as purchaser, which was executed by her and returned to Underwood where it was approved and signed by Underwood agents. Appellants' wire transferred $82,091.75 to Underwood (95% of the price including options and sales tax) receipt of which was acknowledged by Underwood February 11, 1975 at which time Underwood returned to appellants the $12,000 previously paid.
 
 
 5
 The Joneses were to take delivery of the yacht in early March but, instead of taking delivery, they were informed by Underwood's representative that Underwood had closed its doors for business and that General Electric Credit Corporation (GECC-appellee) had "floor-planned" Hull No. 01. Until this time the Joneses had no knowledge of appellee's involvement in the construction financing of the vessel on behalf of Underwood.
 
 
 6
 The facts reveal that appellee-GECC, some four years prior to the events here, had entered into a financing arrangement and security agreement with Underwood whereby GECC advanced funds to Gulfstar to provide financing for vessels being built for Underwood. The security agreement granted a security interest in all Underwood's inventory, presently owned or after-acquired. The security agreement also provided that Underwood had the right to sell any financed inventory so long as Underwood was not in default under the agreement and, in the event of a sale of inventory, GECC would retain a security interest in the proceeds of such a sale. The financing statement was properly filed with the Florida Secretary of State.
 
 
 7
 The facts further reveal that on January 22, 1975, GECC paid $54,000 to Gulfstar on behalf of Underwood to finance construction of Hull No. 01. After receiving this money, Gulfstar sent the invoice, the Master Carpenter's Certificate and the Manufacturer's Statement of Origin to GECC. These documents indicate that Hull No. 01 was sold to Underwood on January 13, 1975. After Underwood closed business GECC had the yacht removed from the water and it took physical possession of the yacht. All subsequent efforts of appellants in trying to obtain release of the vessel proved fruitless.
 
 
 8
 The Joneses filed this action pursuant to 28 U.S.C. § 1333 invoking admiralty and maritime jurisdiction against the defendant vessel, Hull No. 01, and appellee-GECC alleging petitory, possessory and tortious claims. A hearing was held December 30, 1976 on appellant's and appellee's motions for summary judgment. The District Court held there was admiralty jurisdiction; the Uniform Commercial Code (U.C.C.) of Florida was the law to be applied; the Manufacturer's Statement of Origin was a "document of title" within the meaning of the U.C.C.; and appellants were not entitled to the protection of a "buyer in the ordinary course of business" under Florida Statute § 679.9-307(1) because title had not passed to them under Florida Statute § 672.2-401(3).JURISDICTION
 
 
 9
 At the first oral argument of this case the admiralty jurisdiction over this controversy was questioned. The issue is whether the District Court properly exercised its admiralty and maritime jurisdiction over appellant's petitory cause of action.[2] The thrust of appellee's argument is based on the well established general rule that admiralty will not entertain suits where the substantive rights of the parties flow from a contract to sell or construct a vessel. GECC relies heavily on Richard Bertram & Co. v. The Yacht Wanda, 447 F.2d 966, 1971 A.M.C. 1839 (5th Cir.1971), in support of its argument, wherein this Court by adopting the District Court's opinion stated, "the mere fact that a ship is involved will not bring the cause within the jurisdiction of the admiralty court. But, whether this suit is viewed as one to enforce a security interest or mortgage on a vessel, a suit to try or quiet title, a suit for breach of contract of sale, or a suit upon a contract to construct a vessel, it is not within the admiralty jurisdiction of this court."
 
 
 10
 GECC's reliance on The Yacht Wanda is misplaced. That case involved a pure and simple dispute between a vessel manufacturer and buyer concerning a contract for construction and delivery of a vessel. That case did not involve an allegation by the plaintiff of ownership, right to immediate possession, an unlawful taking and detention by defendant and damages caused to the vessel by such tortious conduct by defendants, as in this case. We find appellee's other arguments against jurisdiction without merit.
 
 
 11
 Having found that the District Court properly had jurisdiction over the petitory action and since the possessory and tortious conduct allegations involved here are derivative of the right of title, we hold that the District Court did have subject matter jurisdiction over the Jones' claims.
 
 
 12
 U.C.C.
 
 
 13
 There is no dispute that the vessel involved was "goods" within the meaning of the Uniform Commercial Code and that a determination of appellant's legal title will necessarily depend upon whether or not a sale of the vessel to the Joneses occurred. See Allen v. Carlotti, 400 F.Supp. 1037, 1042 (S.D.Fla.1975), aff'd 552 F.2d 1086 (5th Cir.1977); Gallagher v. Unenrolled Motor Vessel River Queen (Hull No. A-68184), 475 F.2d 117 (5th Cir.1973); F.S.A. § 672.2-105(1). As mentioned above, the District Court recognized that the protection accorded a "buyer in the ordinary course of business", under F.S.A. § 679.9-307(1),[3] would elevate the Jones' interest over any interest of GECC. However, the Court also correctly noted that before Lois R. Jones could benefit from the protection of F.S.A. § 679.9-307(1), unlike a typical case of replevin, their success in an admiralty petitory action would require proof of legal title and not merely a superior equitable title or interest.[4] Silver v. Sloop Silver Cloud, 259 F.Supp. 187 (S.D.N.Y.1966); Stathos v. The Maro, 134 F.Supp. 330 (E.D.Va.1955); Accord, Gallagher, supra ; 2 C.J.S. Admiralty § 59, p. 156-57.
 
 
 14
 In determining whether legal title had vested in the Joneses, the court looked to F.S.A. § 672.2-401(3) which provides:
 
 
 15
 "Unless otherwise explicitly agreed where delivery is to be made without moving the goods,
 
 
 16
 (a) if the seller is to deliver a document of title, title passes at the time when and the place where he delivers such documents; or
 
 
 17
 (b) if the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time of contracting."
 
 
 18
 The implied agreement between Jones and Underwood provided for Jones to take possession of the yacht at Gulfstar's commissioning yard, under F.S.A. § 672.2-308(2), but the contract did not explicitly provide when title was to pass and did not mention delivery of any documents of title. Plaintiffs contended that subsection (b) controlled passage of title since Hull No. 01 was identified to the contract at the time of contracting and therefore title vested in Lois R. Jones at the time she executed the contract. GECC contended that subsection (a) controlled because the Master Carpenter's Certificate and the Manufacturer's Statement of Origin are documents which are delivered in the ordinary course of business to the buyer of a newly manufactured vessel.
 
 
 19
 F.S.A. § 671.1-201(15) defines document of title:
 
 
 20
 Document of title includes bill of lading, dock warrant, dock receipt, warehouse receipt or order for the delivery of goods, and also any other document which in the regular course of business or financing is treated as adequately evidencing that the person in possession of it is entitled to receive, hold and dispose of the document and the goods it covers. To be a document of title a document must purport to be issued by or addressed to a bailee and purport to cover goods in the bailee's possession which are either identified or are fungible portions of an identified mass.
 
 
 21
 (emphasis added)
 
 
 22
 The District Court examined the purposes of the Master Carpenter's Certificate and found that, although it may be necessary for United States registration, federal registration[5] does not, of itself, confer the emoluments of title and ownership to a vessel and, therefore, the Master Carpenter's Certificate did not adequately evidence the right to possess the vessel and accordingly it did not qualify as a "document of title" within the meaning of F.S.A. § 671.1-201(15).
 
 
 23
 Regarding the Manufacturer's Statement of Origin, the Court recognized Florida's system for issuance of title certificates for vessels which are required for operation and disposition of vessels in Florida. The court also recognized that the Manufacturer's Statement of Origin was not necessary for application of a Florida certificate of title and found that to be persuasive that the Statement of Origin was not a document of title. However, by examining the motor vehicle registration statutes of Florida (which require a Manufacturer's Statement of Origin to be issued to a vehicle purchaser) and by analogizing those statutes with Florida's boat registration statutes, the court reasoned that the purpose of both statutes was the same to create a document of title pending formal application for a title certificate. The court concluded that, since Lois R. Jones had never received the Manufacturer's Statement of Origin, title never passed to her under subsection (a) and therefore she never became a "buyer in the ordinary course of business".
 
 
 24
 In deciding this case we do not need to pass judgment on the correctness of the District Court's analysis of the Florida boat registration statutes because, whether or not the Manufacturer's Statement of Origin or the Master Carpenter's Certificate are documents evidencing ownership within the Florida boat registration scheme, they are not "documents of title" within the meaning of F.S.A. § 671.1-201(15). In the District Court's order only the first sentence of F.S.A. § 671.1-201(15) is quoted. When taken alone, without reference to the second sentence, the definition seems to have a much broader scope than intended which would include certificate of title to motor vehicles or aircraft. See F.S.A. § 679.9-103(2). To give "documents of title" such a broad definition would ignore the statutory definition as well as the commercial setting in which such documents are used.
 
 
 25
 The meaning and purpose of "documents of title" is narrowed and clarified by the second sentence which reads, "to be a document of title a document must purport to be issued by or addressed to a bailee and purport to cover goods in the bailee's possession which are either identified or are fungible portions of an identified mass." Upon a simple reading, it becomes clear that a "document of title", as defined, had no application to the contractual relationship between Underwood, a retail seller, and Lois R. Jones, a retail purchaser. When the second sentence is read together with the first sentence, the commercial usage of a document of title becomes apparent. Generally speaking, a document, such as a warehouse receipt, is sent to a purchaser of goods contemporaneously with shipment of the goods, covered by the document, to a warehouseman-bailee. The purchaser then produces the document for the warehouseman to prove his right to take possession of those goods. Sometimes prior to claiming the goods, the purchaser-holder of the document will negotiate the document or obtain a loan upon it. See generally F.S.A. § 677.7-101 et seq. A holder of a document of title, as contemplated by the Code, has title to the document and title to the goods it covers by virtue of possession of the document. F.S.A. § 677.7-502. When considered in proper context, the law is clear that, whatever a Master Carpenter's Certificate or Manufacturer's Statement of Origin are, they are not "documents of title" as that term is used in the Uniform Commercial Code.
 
 CONCLUSION
 
 26
 In finding, as we have, that the sale between Underwood and Jones was in no way contingent or dependent upon delivery of a "document of title" it is apparent that F.S.A. § 672.2-401(3)(b) governs the transaction. The facts are undisputed that Hull No. 01 was identified to the contract when it was executed by Lois R. Jones and therefore title passed to her at the time of contracting pursuant to subsection (b). Accordingly, we reverse any inconsistent portion of the District Court's opinion, remand the case for entry of judgment in favor of plaintiffs' petitory and possessory actions and for a trial to determine damages for the defendant's tortious conduct in taking, detaining or damaging the vessel, and direct that Gulfstar Sailing Yacht, Hull No. 01 now CAST OFF.
 
 
 27
 AFFIRMED in part; REVERSED AND REMANDED in part.
 
 
 
 [1]
 But hear generally, CHRISTOPHER CROSS, Sailing, in CHRISTOPHER CROSS, Warner Brothers Records (1980)
 
 
 [2]
 At the trial level the appellee-GECC argued that Hull No. 01 was not a "vessel" within the meaning of 1 U.S.C. § 3 since the yacht's construction was not totally complete and because Hull No. 01 was out of the water when this controversy began. The facts are undisputed that Hull No. 01 was test sailed. There can be no doubt that sailing in navigable waters qualified Hull No. 01 as a "vessel". See M/V Marifax v. McCrory, 391 F.2d 909 (5th Cir.1968); Pleason v. Gulfport Shipbuilding Corporation, 221 F.2d 621 (5th Cir.1955); Rogers v. M/V Ralph Bollinger, 279 F.Supp. 92 (E.D.La.1968). We know of no case or authority for the proposition that a vessel ceases to be a vessel merely by being placed in dry storage
 
 
 [3]
 F.S.A. § 679.9-307(1) provides that a buyer in the ordinary course of business . . . takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence. "Buyer in the ordinary course of business" is defined in F.S.A. § 671.1-201(9) and there is no dispute that Lois R. Jones qualifies under that definition notwithstanding the argument that title had not passed to her. See generally, White & Summers, Uniform Commercial Code, § 25-13, p. 940-43 (1972)
 
 
 [4]
 If the law of admiralty in a petitory action did not require a determination of legal title, resolution of this case would be quite simple. Under F.S.A. § 697.9-306(1) and (2) it is clear that GECC would be relegated to the "proceeds" of the "sale" realized by Underwood under the Underwood-Jones contract of sale. No further examination as to whether or not Jones was a "buyer in the ordinary course of business" would be necessary because GECC's security interest in that particular item of Underwood's inventory was extinguished at the moment of sale to Jones
 
 
 [5]
 46 U.S.C. § 24 (1958); See Documentation and Measurement of Vessels, 46 C.F.R. § 67.09-1 (1976)