LEWCO CORPORATION and Asset Management Corp., Plaintiffs,

v.

ONE 1984 23′ CHRIS CRAFT MOTOR VESSEL, her engines, tackle, appurtenances, etc., Hull I.D. # CCBBE159M84D, in rem; and M/V SEA DUCER, her engines, tackle, appurtenances, etc., Official Number 944566, in rem, Defendants,

and

Anchor Bank National Association, Defendant/Claimant.

Civ. No. 3–95–245.

United States District Court, D. Minnesota, Third Division.

May 31, 1995.

Derric Saville, Saville Law Firm, Wayzata, MN, for plaintiffs.

C. Scott Massie, Johnson & Wood, P.A., Wayzata, MN, for defendant/claimant Anchor Bank Nat. Ass'n.

## ORDER

DAVIS, District Judge.

Based on the factual findings, legal conclusions and Recommendations by United States Magistrate Judge John M. Mason dated May 5, 1995, all files and records, and no objections having been filed to said Recommendations,

IT IS HEREBY ORDERED that:

1. The arrest of the vessels herein is hereby vacated; and

2. The above matter may be, and hereby is, dismissed with prejudice, pursuant to the provisions of Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## REPORT AND RECOMMENDATION

MASON, United States Magistrate Judge.

The above matter came on for hearing before the undersigned on April 19, 1995. Appearances were as follows: Derric Saville of Saville Law Firm for Plaintiffs; C. Scott Masie of Johnson & Wood, P.A., for Intervening Defendant/Claimant Anchor Bank National Association.

## REPORT

This matter was commenced in this Court by the filing of a verified Complaint to recover possession of certain vessels. Plaintiffs base their claim of jurisdiction solely upon the admiralty jurisdiction of this Court. U.S. Const. art III, § 2, cl. 1; 28 U.S.C. § 1333(1). See also Fed.R.Civ.P. 9(h), and Supplemental Admiralty Rules C, D and E. Upon the basis of the verified Complaint, and the provisions of Rule C of the Supplemental Admiralty Rules, on March 22, 1995, a Warrant for the Arrest *in rem* of the vessels was issued, and the vessels were arrested and seized.

On March 24, 1995, Defendant/Claimant Anchor Bank, N.A. filed its verified Claim against the vessels. Supplemental Admiralty Rules C(6) and E(8). Promptly thereafter, it filed this Motion challenging the jurisdiction of the Court, upon the ground that there is no jurisdiction because this is not an admiralty dispute. The dispute in this Court arises out of earlier financing transactions by which Anchor Bank N.A. loaned approximately $75,000 to Stephen J. Ritz and Inland Marine, who claimed to own the vessels. Anchor Bank secured the loans by taking a security interest in the vessels. After the funds were transferred to Ritz and Inland, Lewco Corporation and Asset Management Corporation (Plaintiffs in this action), claimed that they were the owners of the vessels, and that Ritz and Inland were without authority to use the vessels as security.

Anchor Bank filed a UCC–1 statement in Minnesota. On February 13, 1995, it commenced a replevin action in Hennepin County District Court seeking a determination that its security interest was superior to the rights of Lewco and Asset Management.[1] That Court is capable of determining the validity and enforceability of the security agreements, and all other issues raised in the present matter. The issues were to be heard on March 16, 1995 in Hennepin County District Court, on the Motion of Anchor Bank for an Order that the vessels be seized and sold to pay the balance due on the loans to Ritz and Inland. However, on March 15, 1995, Plaintiffs commenced the instant action, and the Minnesota matter was held in abeyance pending a determination of the jurisdiction of this Court. Affidavit of Massie, paragraph 9. The vessels are held in the joint possession of Plaintiffs and Anchor Bank, pursuant to agreement. Affidavit of Massie, paragraph 7, and Exhibit A thereto.

---

1. The State Court Action is entitled *Anchor Bank National Association, f/k/a First National Bank of Wayzata, a National Banking Association, Claimant v. Stephen J. Ritz, Lewco Corporation, Inland Marine, Inc., and Asset Management Co., Inc.,* and is venued in the District Court, Fourth Judicial District, Hennepin County, Minnesota, Court File No. 95–002636. It is assigned to The Honorable Thomas H. Carey.

The parties agreed upon an expedited schedule for the submission of legal memoranda and supporting documentation, and an accelerated hearing was held before the undersigned for Report and Recommendation. We begin the analysis by examining some principles of general application.

### Burden of Establishing Jurisdiction

■ Plaintiffs bear the burden of establishing that this Court has jurisdiction. *Marina Entertainment Complex v. Hammond Port Auth.*, 842 F.Supp. 367, 369 (N.D.Ind. 1994) ("Once challenged, the nonmoving party must bear the burden of establishing that jurisdictional requirements have been met. *Kontos v. United States Dept. of Labor*, 826 F.2d 573, 576 (7th Cir.1987)"); *Newhard, Cook & Co. v. Inspired Life Centers, Inc.*, 895 F.2d 1226, 1228 (8th Cir.1990) ("It is incumbent upon Newhard, as the party seeking to invoke federal jurisdiction, to establish jurisdiction by a preponderance of the evidence. This burden may not be shifted to Inspired Life, the party challenging jurisdiction.").

### Effect of Admiralty Rules

■ Where admiralty jurisdiction is found to exist, provision is made in the Supplemental Rules for Certain Admiralty and Maritime Claims for certain remedies which are unique to the admiralty jurisdiction. The existence of the remedies set forth in those Supplemental Rules does not create jurisdiction, but rather is dependent upon jurisdiction otherwise established. *Cary Marine, Inc. v. Motorvessel Papillon*, 872 F.2d 751, 754 (6th Cir.1989):

"If a case is subject to admiralty jurisdiction, resort to these remedies is available. In the absence of admiralty jurisdiction, however, these remedies are not available. Generally, admiralty jurisdiction extends only to wholly maritime contracts. In determining whether a contract action is subject to admiralty jurisdiction, the subject matter of the contract is controlling."

*See also Silver v. Sloop Silver Cloud*, 259 F.Supp. 187 (S.D.N.Y.1966).

### Jurisdiction Over "Maritime Contracts"

■ It is frequently stated that Admiralty jurisdiction exists only with respect to "maritime contracts." This broad statement is less helpful than it might seem, since there is no clear definition of what constitutes a "maritime contract." In *Kossick v. United Fruit Co.*, 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961), the Supreme Court stated:

"The boundaries of admiralty jurisdiction over contracts—as opposed to torts or crimes—being conceptual rather than spatial, have always been difficult to draw."

In *Goodman v. 1973 26 Foot Trojan Vessel*, 859 F.2d 71, 72–73, (8th Cir.1988), the Court quoted with approval from *Kossick*, and *CTI–Container Leasing v. Oceanic Operations*, 682 F.2d 377 (2d Cir.1982):

"A contract dispute falls within admiralty jurisdiction if the subject matter of the dispute is maritime. [citations omitted]. What is maritime is not self-evident, and must be determined by analyzing the case law.... For example, a contract to build a ship is not within admiralty jurisdiction, but a contract to repair a ship is. A contract to purchase a vessel falls outside admiralty jurisdiction, but a contract to charter a vessel is within."

More colorfully, a commentator has described admiralty jurisdiction as follows:

"Roughly, the included territory may be defined somewhat as follows, with many zigzags.... First, a case in contract is 'maritime' if the contract 'concerns' the 'navigation, business or commerce of the sea.' A contract to repair a ship does; to build one, not. A charter party, yes; a broker's agreement to procure one, no. Maritime insurance, yes; a contract to procure it, no. It is in this field that the zigzagging is most manifest. The attempt to project some 'principle' is best left alone. There is about as much 'principle' as there is in a list of irregular verbs. Fortunately, the contracts involved tend to fall into a not-too-great number of stereotypes, the proper placing of which can be learned, like irregular verbs, and errors in grammar avoided."

Charles L. Black, Jr., *Admiralty Jurisdiction: Critique and Suggestions,* 50 Col. L.Rev. 259, 264 (1950). With these general principles in mind, we turn to the particular facts and issues presented in the matter now before the Court.

### The Specifics Of This Case

The Plaintiffs in this case seek a declaration that they are the legal owners of the vessels, and that their ownership is "free and clear of all lien, claims and rights of interest asserted by any and all other persons." A similar factual situation was presented in *Richard Bertram & Co. v. The Yacht, Wanda,* 447 F.2d 966 (5th Cir.1971), the plaintiff had sold a vessel to defendant, and claimed that defendant did not pay for the boat. The plaintiff brought "a possessory or petitory action", and sought a declaration that it was the owner of title to the boat, and that defendant did not have a claim to title. The District Court found that there was no jurisdiction, and was affirmed by the Court of Appeals, which adopted the opinion of the District Court as its own. The opinion observed that it is the essence of the contract to which reference must be made, not the labels affixed:

"The mere fact that a ship is involved will not bring the cause within the jurisdiction of the admiralty court. But whether this suit is viewed as one to enforce a security interest or mortgage on a vessel, a suit to try or quiet title, a suit for breach of a contract of sale, or a suit upon a contract to construct a vessel, it is not within the admiralty jurisdiction of this Court."

*Id.* at 967–968. In another case from the Fifth Circuit, the Court found there was no jurisdiction under similar facts. In *J.A.R., Inc. v. M/V Lady Lucille,* 963 F.2d 96 (5th Cir.1992), a purchaser of a ship sought a judicial determination that its rights were superior to those of the seller. The District Court had found that jurisdiction existed. The Court of Appeals raised the issue *sua sponte,* and reversed the decision of the District Court. It again rejected the use of labels to determine the jurisdictional issue:

"Characterizing the dispute before us as a 'petitory' action for title apart from the underlying contract dispute, so that it can become 'maritime' and bestow jurisdiction upon this court to determine who holds title while arbitration is in progress is, to say the least, grasping."

*Id.* at 99.

In *The Managua, Garcia v. Garcia,* 42 F.Supp. 381 (S.D.N.Y.1941), one of the members of a partnership sold a vessel. The other partner claimed that the sale was without authority, and brought a "petitory, possessory" claim against the vessel, seeking a declaration that the purchaser has not interest in the vessel. The Court held that it was without jurisdiction.

Plaintiffs rely upon the case of *Jones v. One Fifty Foot Gulfstar Motor Sailing Yacht, Hull No. 01,* 625 F.2d 44 (5th Cir. 1980). In *Jones,* a boat purchaser who had paid 95% of the purchase price for a vessel brought an action seeking to establish that his rights were superior to those of the finance company which had provided floor plan financing for all of the sellers boats. The Court of Appeals upheld the finding of the District Court that there was Admiralty jurisdiction.

On the surface, this case appears to be at odds with the holdings in the Fifth Circuit *Bertram* case which precedes it and *J.A.R., Inc.* which follows it. Yet the *Jones* Court acknowledged the decision in *Bertram,* and distinguished it by stating:

"That case did not involve an allegation by the plaintiff of ownership right to immediate possession, an unlawful taking and detention by defendant and damages caused to the vessel by such tortious conduct by defendant as in this case."

Id. at 47. And the Court in *J.A.R., Inc.,* acknowledged the *Jones* case, and distinguished the case on the same basis. *J.A.R., Inc. v. M/V Lady Lucille,* 963 F.2d at 99. It is acknowledged that the distinction does not seem particularly compelling. However, it is not necessary to reconcile the cases since we believe that the holding in *Bertram* and *J.A.R., Inc.* is more in keeping with the rationale which underlies the decisions of the Supreme Court in analogous cases, and the

facts of the instant dispute appear to be closer to those cases than to the facts in *Jones*.

■ A finding that this Court lacks Admiralty jurisdiction to hear an action by an owner seeking a declaration that liens or mortgages are *not* valid, is consistent with a line of cases presenting the reverse side of the same coin: one who *claims* a lien or a mortgage upon a vessel does not present a claim within the admiralty jurisdiction of the Court. This proposition of law goes back to 1854.

In *Bogart v. The Steamboat John Jay*, 58 U.S. (17 How.) 399, 15 L.Ed. 95 (1854), a mortgage holder had sought to enforce the terms of its mortgage. The Supreme Court affirmed the dismissal of the action upon jurisdictional grounds: "It has been repeatedly decided in the admiralty and common law courts in England, that the former have no jurisdiction in questions of property between a mortgagee and the owner." *Id.* 58 U.S. (17 How.) at 401.[2]

■ Congress determined to expand the Admiralty jurisdiction of the federal courts, when it passed the Ship Mortgage Act of 1920, 46 U.S.C. § 951.[3] The Supreme Court held that Admiralty jurisdiction was expanded, but only as to "preferred mortgages," provided for by the Act. *Detroit Trust Co. v. The Barlum*, 293 U.S. 21, 32–33, 55 S.Ct. 31, 33–34, 79 L.Ed. 176 (1934). In *McCorkle v. First Pennsylvania Banking and Trust Co.*, 459 F.2d 243 (4th Cir.1972), the Court of Appeals reversed a finding of Admiralty jurisdiction by the District Court. In that case, plaintiffs purchased a yacht without knowledge that a non-maritime security interest had been filed against the yacht. The court

observed that there was a time when all mortgages on ships were held to be "non-maritime." It held that when Congress passed the Ship Mortgage Act of 1920, it did not expand admiralty jurisdiction to encompass all ship mortgages, but rather only to "preferred maritime mortgages" within the meaning of the Act.[4] *Id.* at 248.

The security interests involved in the instant case are not "preferred mortgages." In *McCorkle*, jurisdiction was rejected when sought by one *claiming* a security interest; in this case, the jurisdiction is sought by the owner of the vessel, *disclaiming* the security interest. There is no Admiralty jurisdiction in either case.

Finally, the recent case of *Exxon Corp. v. Central Gulf Lines, Inc.*, 500 U.S. 603, 111 S.Ct. 2071, 114 L.Ed.2d 649 (1991) suggests that courts take a more practical view of the issue of admiralty jurisdiction. The specific issue in that case was whether to maintain the rule that agency contracts could not be brought in admiralty. The Supreme Court stated:

"Section 1333(1) of Title 28 U.S.C. grants federal district courts jurisdiction over '[a]ny civil case of admiralty or maritime jurisdiction.' In determining the boundaries of admiralty jurisdiction, we look to the purpose of the grant. *See Insurance Co. v. Dunham*, 11 Wall. 1, 24, 20 L.Ed. 90 (1871). As we recently reiterated, the 'fundamental interest giving rise to maritime jurisdiction is "the protection of maritime commerce."'" *Sisson v. Ruby*, [497] U.S. [358, 367], 110 S.Ct. 2892, 2897, 111 L.Ed.2d 292 (1990), quoting *Foremost Ins.*

---

2. The Supreme Court confirmed in another case that a mortgage is not a maritime contract: "An ordinary mortgage of a vessel, whether made to secure the purchase money upon the sale thereof, or to raise money for general purposes, is not a maritime contract. A court of admiralty, therefore, has no jurisdiction of a libel to foreclose it or to assert either title or right of possession under it." *The J.E. Rumbell*, 148 U.S. 1, 15, 13 S.Ct. 498, 501, 37 L.Ed. 345 (1893).

3. The Ship Mortgage Act, 46 U.S.C. § 911 *et seq.*, was repealed effected January 1, 1989 and replaced by 46 U.S.C. § 30101 *et seq.*

4. "In an effort to make investment in ship mortgages more attractive, the Act accords priority to mortgages given on vessels of the United States, as against most other liens, upon compliance with certain filing requirements. 46 U.S.C. § 922(a), (b), (c) and (d). Upon meeting these filing requirements, the mortgages become known as 'preferred mortgages.' 46 U.S.C. § 922(b)." *McCorkle*, 459 F.2d at 247.

*Co. v. Richardson,* 457 U.S. 668, 674, 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300 (1982)."

*Id.* 500 U.S. at 608, 111 S.Ct. at 2074–75.

 Applying the principles of the specific cases, and the general philosophy underlying those cases as set forth in *Exxon,* the Court concludes that Plaintiffs have not sustained their burden of showing that the instant dispute is maritime in nature. The Court thus lacks jurisdiction.

## RECOMMENDATION

It is recommended as follows:

1. That the Court vacate the arrest of the vessels; and

2. That the Court dismiss this action without prejudice pursuant to the provisions of Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Dated: May 5, 1995.

Pursuant to Fed.R.Civ.P. 6(a), Local Rule 1.1(f), and Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties within ten days after service of a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days after service of the Report and Recommendation.