**PRIVILEGE YACHTING, INC., Plaintiff and Counter–Defendant,**

v.

**John TEED and S/Y Forty Roses I, Defendants and Counter–Claimants.**

**Civ. A. No. 93–241–JJF.**

United States District Court, D. Delaware.

April 19, 1994.

Michael B. McCauley, of Palmer Biezup & Henderson, Wilmington, DE, John G. Kissane, of Palmer Biezup & Henderson, Philadelphia, PA, for plaintiff.

Peter E. Hess, Wilmington, DE, for defendants.

### OPINION

FARNAN, District Judge.

### I. INTRODUCTION

Presently before the Court is the Motion to Quash Admiralty Arrest of the Forty Roses filed by Defendant John Teed (D.I. 43). Because the Court finds that there is no basis for admiralty jurisdiction or the arrest of the vessel *in rem*, the Court will grant Defendant's Motion to Quash.

### II. FACTS

The following facts are undisputed. John Teed is a Canadian citizen living in the United States. In the Spring of 1990, Defendant Teed contacted Plaintiff, Privilege Yachting, Inc. ("Privilege"), and expressed an interest in buying a Privilege 39 sailing catamaran. In June, 1990, Defendant Teed gave Privilege a $5,000 deposit. Teed made further payments as the vessel was being built. The last payment made by Teed occurred on August 1, 1991, in the amount of $86,764.90. Teed has paid about $175,000 to Privilege for the 39 catamaran (Forty Roses) which is the subject of this action.

Teed took delivery of the Forty Roses in August 1991. At the time of delivery, Privilege released unrestricted title to the yacht to Mr. Teed. The certificate of registry lists John Teed as the owner.

This is where the factual accounts of the parties diverge. Teed alleges that he informed Mr. Martel at Privilege that he was unable to obtain financing and that notwithstanding this lack of financing Privilege delivered and released title to the Forty Roses to Mr. Teed in August of 1991.

Teed further alleges that there was never a final sales price for the yacht which fluctuated with the exchange rate for the French franc and disputes over various fixtures to be included in the yacht. Teed alleges that in the two years from the transfer of the title to the time of the admiralty arrest, Privilege made no demand for further payment. According to Mr. Teed, the yacht was paid in full by Teed allowing Privilege to take possession of the yacht for the purpose of exhibiting it in Newport, Rhode Island, and Annapolis, Maryland, and by Mr. Teed's travel to Florida to act as a sales representative for Privilege.

For its part, Privilege alleges that Mr. Teed was supplied with invoices as the vessel was being built to show the cost of the vessel and that the base price of the vessel in French francs did not change. Further, Privilege alleges that there was an agreed upon final sales price of $328,845.75.

Privilege alleges that it was given the right to use the vessel for boat shows in consideration for Privilege's agreement to carry the outstanding debt of Mr. Teed until Mr. Teed could obtain financing or pay off the outstanding balance. Mr. Teed also agreed to list Privilege as the loss payee and as additional insured on the insurance for the Forty Roses.

Privilege also asserts, contrary to Mr. Teed, that Privilege attempted numerous times to recover the outstanding balance from Mr. Teed, and each time Mr. Teed promised a future payment.

## III. *DISCUSSION*

Defendant Teed seeks to quash the arrest of the Forty Roses, arguing that there is no basis for admiralty jurisdiction or the arrest of the Forty Roses *in rem.* Plaintiff advances two arguments for the claim that it is entitled to arrest the vessel: (1) Privilege argues that it possesses a valid mortgage against the Forty Roses under Canadian law and that mortgage is enforceable *in rem* pursuant to Rule C and the Ship Mortgage Act, 46 U.S.C. § 31325; and (2) Privilege contends that the vessel should be partitioned under Rule D.

### A. *Rule C and the Ship Mortgage Act*

■ Rule C of the Supplemental Rules for Admiralty Claims provides in relevant part:

(1) When available. An action in rem may be brought:

(a) To enforce any maritime lien; (b) whenever a statute of the United States provides for a maritime action in rem or proceeding analogous thereto.

Privilege asserts that it has a right to arrest the Forty Roses pursuant to Rule C(1) and the Ship Mortgage Act, 46 U.S.C. § 31321 *et seq.* The Ship Mortgage Act is a statute which provides for a maritime action in rem. Section 31325 of the Ship Mortgage Act provides that a "preferred mortgage is a lien on the mortgaged vessel in the amount of the outstanding mortgage indebtedness secured by the vessel." Section 31325(b) further provides that the preferred mortgage may be enforced in rem.

In 1954, Congress amended the Ship Mortgage Act to cover foreign mortgagees. Significantly, the strict procedural requirements for domestic mortgages were not imposed on foreign mortgages. By its terms, the Act does not require the foreign mortgage be a preferred mortgage or maritime lien under the foreign law. A mortgagee is not even required to establish the validity of the mort-

gage under foreign substantive law. All the Ship Mortgage Act requires is that the alleged mortgage be "duly and validly executed" and "duly registered" under the foreign law.

Privilege asserts that it possesses an equitable mortgage on the Forty Roses under Canadian law. Further, Privilege argues that under Canadian law, the fact that the mortgage is not in the statutory form, has not been registered and is not in writing does not affect the enforceability of the equitable interest. Finally, Privilege argues that Canadian law gives rise to the right to enforce its equitable mortgage by arresting the vessel *in rem* and that because arrest of the vessel would clearly be appropriate under the laws of Canada, Section 31325(c) requires the Court to enforce Privilege's alleged equitable mortgage in compliance with Canadian law.

Even assuming that Privilege possesses a foreign mortgage that has been duly and validly executed under the laws of Canada,[1] the Ship Mortgage Act does not confer upon it the right to arrest the Forty Roses I, unless Privilege can also demonstrate that the mortgage was "duly registered."[2] Privilege argues that because Canadian law does not require any registration in order for the mortgage to be enforceable, the Court should not require any here.

The Court disagrees. While the Ship Mortgage Act relaxes requirements of a foreign mortgage, it clearly contemplates that the mortgage would be registered or published in a central public office. This ensures that third parties have notice of the mortgage. Therefore, even if Privilege possesses a valid and enforceable equitable mortgage under Canadian law, the Ship Mortgage Act does not contemplate enforcing such equitable mortgages *in rem.*

Authorities cited by Privilege are not to the contrary. For example, in support of its

---

**1.** The Court finds it unnecessary to decide this question.

**2.** Under the Ship Mortgage Act, a "preferred mortgage" includes:

a mortgage, hypothecation, or similar charge that is established as a security on a foreign vessel if the mortgage, hypothecation, or simi-

lar charge was executed under the laws of the foreign country under whose laws the ownership of the vessel is documented *and has been registered under those laws in a public register at the Port of Registry of the vessel or at a central office.*

argument Privilege cites two cases where district courts applied Canadian law to the arrest of a vessel in a United States port. *Ocean Ship Supply, Ltd. v. M/V Leah,* 1982 A.M.C. 2740 (D.S.C.1982); *Ramsay Scarlett & Co. v. S.S. Koh Eun,* 462 F.Supp. 277 (E.D.Va.1978). In *Ocean Ship Supply,* 1982 A.M.C. 2740 (D.S.C.1982), the Court of Appeals for the Third Circuit looked to Panamanian law to determine if the mortgagee had "duly registered" its mortgage. However, unlike the case now before the Court, the mortgagee in *Ocean Ship Supply* had registered his mortgage; the only question for the Court was did it comply with Panamanian law.

Because Privilege does not purport to have registered its alleged mortgage even under Canadian law, the Ship Mortgage Act is unavailable to Plaintiff in this action to support the arrest of the Forty Roses under Rule C.

### B. *Rule D*

Privilege's reliance on Rule D is similarly unavailing. Rule D provides that in all actions for possession, partition or to try title of a vessel or other maritime property, the process shall be by a warrant of arrest of the property. Privilege argues that an action for possession or partition under Rule D is clearly within this Court's admiralty jurisdiction, even if the dispute arose out of a contract for the construction or sale of a vessel (i.e. a non-maritime contract). Privilege argues that the only requirement necessary for the court to exercise admiralty jurisdiction over a vessel under Rule D is that, at the time of the arrest, the *res* was a vessel fit for navigation.

■ Privilege now demands that the vessel be sold and partitioned to satisfy its ownership interest in the vessel. In support of its contention that Privilege is part-owner of the vessel, Privilege points to Teed's agreement to list Privilege as a loss-payee on the vessel's insurance, and Privilege's right to actual possession of the vessel for the purpose of showing it.

Privilege has not convinced the Court that it is entitled to partition. Regardless of how Privilege characterizes this action, the dispute before the Court arises out of an agreement to construct a boat. There is nothing maritime about the parties' disagreement; it is nothing more than a contract dispute over the price, terms, and conditions of the contract to build the catamaran and the allegations that one or the other party has breached the contract. *See Cary Marine, Inc. v. Motorvessel Papillon,* 872 F.2d 751, 754 (6th Cir.1989); *Silver v. Sloop Silver Cloud,* 259 F.Supp. 187, 190–91 (S.D.N.Y.1966). To the extent that Plaintiff is claiming title to the vessel, it is only because Plaintiff and Defendant are arguing over the terms of the underlying construction contract. As the Court of Appeals for the Fifth Circuit stated in *J.A.R., Inc. v. M/V Lady Lucille,* 963 F.2d 96, 99 (5th Cir.1992), "[c]haracterizing the dispute before us as a 'petitory' action for title apart from the underlying contract dispute so that it can become 'maritime' and bestow jurisdiction upon this court … is, to say the least, grasping." [3]

■ Moreover, Privilege has failed to demonstrate that its action can appropriately be characterized as possessory or petitory. A petitory suit is an action to try title to a vessel. In order to bring a petitory suit, the Plaintiff must assert legal title to the vessel. The assertion of equitable title alone is not sufficient. Plaintiff does not, and could not assert legal title to the catamaran. Plaintiff conveyed unrestricted title and possession to Defendant at the time the boat was delivered.

■ Neither may this action be properly characterized as a possessory action under Rule D. "A possessory action permits a party to adjudicate the right to possession of property that has been wrongfully taken." *Cary Marine,* 872 F.2d at 756. As Plaintiff is not alleging wrongful deprivation of property, it would seem there is no basis for a possessory action. Accordingly, the Court

---

3. *See also Richard Bertram & Co. v. The Yacht, Wanda,* 447 F.2d 966, 967–68 (5th Cir.1971), where in a similar case involving a dispute over the contract price for the construction of a vessel, the court stated, "whether this suit is viewed as one to enforce a security interest or a mortgage on a vessel, a suit to try or quiet title, a suit for breach of a contract of sale, or a suit upon a contract to construct a vessel, it is not within the admiralty jurisdiction of this Court."

concludes that the Plaintiff is not entitled to arrest the Forty Roses under Rule D.

### IV.  *CONCLUSION*

For the foregoing reasons, the Court concludes that Plaintiff has failed to establish the Court's jurisdiction in admiralty. Accordingly, Defendant's Motion to Quash the Arrest of the Forty Roses will be granted. Plaintiff's in personam action against Mr. Teed will likewise be dismissed.

An appropriate Order will be entered.